IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| PAULA NOEL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04-900-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSIONER of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

David B. Lowry
9900 S. W. Greenburg Road
Columbia Business Center, Suite 235
Portland, Oregon 97223

Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Craig J. Casey
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

David J. Burdett
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

Attorneys for Defendant

KING, Judge:

Plaintiff Paula Noel brings this action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3) of the Social Security Act, to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"). I reverse the decision of the Commissioner.

**BACKGROUND**

Plaintiff filed an application for DIB and SSI on August 28, 2001. The application was denied initially and upon reconsideration. After a timely request for a hearing, plaintiff, unrepresented by counsel, appeared before an Administrative Law Judge ("ALJ") on February 27, 2003. On June 27, 2003, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

**LEGAL STANDARDS**

The Social Security Act (the "Act") provides for payment of DIB to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits ("SSI")

may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The burden of proof to establish a disability rests upon the claimant. Gomez v. Chater, 74 F.3d 967, 970 (9th Cir.), cert. denied, 519 U.S. 881 (1996) (DIB); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992) (SSI). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. 20 C.F.R. §§ 404.1520 and 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1996) (DIB); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the

claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Distasio v. Shalala, 47 F.3d 348, 349 (9th Cir. 1995) (DIB); Drouin, 966 F.2d at 1257 (SSI). The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

When an individual seeks either DIB or SSI because of disability, judicial review of the Commissioner's decision is guided by the same standards. 42 U.S.C. §§ 405(g) and 1383(c)(3). This court must review the case to see if the decision of the Commissioner is supported by

substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

**FACTS**

I. Noel's History

Plaintiff, a 33-year-old woman at the time of the hearing, alleges disability beginning May 15, 2001, due to relapsing/remitting multiple sclerosis ("MS"). Plaintiff received her BA in arts and public relations in 1991 and then received a Ph.D. in philosophy in 2001.

Plaintiff testified that she has past work experience as a marketing director for her family's construction business, a retail salesperson, a program coordinator, and a professor.

Plaintiff was diagnosed with MS in August 2001. Her symptoms include generalized weakness, extreme fatigue, and muscle spasms. Plaintiff has also suffered from depression at times. Plaintiff moved in with her 94-year-old grandmother, who is completely self-sufficient, due to plaintiff's financial constraints.

II. The ALJ's Decision

The ALJ found that MS is considered severe within the meaning of 20 C.F.R. § 404.1520(b), but does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

The ALJ determined that plaintiff is limited to a sedentary level of physical exertion, is able to lift and carry 20 pounds occasionally and 10 pounds frequently, and is able to sit and to atand or walk for 6 hours during an 8-hour work day. He also determined she is unable to climb ladders, scaffolds, and ropes, and she should avoid concentrated exposure to hazards, such as machinery and heights.

Based on this residual functional capacity, and the testimony of the vocational expert ("VE"), the ALJ concluded that plaintiff was unable to return to her past relevant work. Nevertheless, relying on the VE's testimony, the ALJ concluded that plaintiff could perform a significant number of other jobs that exist in the national economy, including information clerk/clerical receptionist, data entry, and an order clerk/clerical worker. Accordingly, the ALJ found that plaintiff was not under a "disability" within the meaning of the Social Security Act, at any time through her date last insured.

**DISCUSSION**

I. Medical Opinions and Lay Testimony

Plaintiff argues that the ALJ improperly rejected the opinions of Roy Swank, M.D., Ph.D., Jocelyn Kirnak, D.C., and Shelly Wagar, LMT. In addition, plaintiff argues the ALJ improperly failed to discuss plaintiff's father's observations about how plaintiff's symptoms affect her activity level.

A. Dr. Swank

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d at 830. More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830.

Dr. Swank, a neurologist, has been treating plaintiff with an alternative method of diet and rest since at least August 1, 2002. He concluded that plaintiff was permanently and totally disabled as a result of her MS.

The ALJ rejected Dr. Swank's opinion that plaintiff was unable to work for greater than one to two hours without becoming tired. The ALJ found that Dr. Swank's medical opinion did not reference any objective findings, thereby providing no foundation for the limitations he recommended. In addition, the ALJ found Dr. Swank's opinions less credible because Dr. Swank is the proponent of a strict diet to control symptoms of MS, a treatment method the ALJ believes is not highly regarded in the medical field.

The parties disagree as to whether Dr. Swank's opinion was contradicted by another opinion. The outcome of this disagreement is important as it determines whether in rejecting the opinion, the ALJ needed to have provided clear and convincing reasons, or whether the ALJ's

rejection may be based on specific and legitimate reasons supported by substantial evidence in the record.

The Commissioner argues that Dr. Swank's testimony was in conflict with that of Stanley Cohan, M.D., and that the ALJ properly determined credibility and resolved the conflict by setting forth specific and legitimate reasons. The conflict to which the Commissioner points is the following statement made by Dr. Cohan: "Unfortunately there is an abundance of evidence to demonstrate that various dietary manipulations are tragically of no value in patients with multiple sclerosis." Tr. 186. The ALJ relied on this statement to support his finding that Dr. Swank's method of treatment was not highly regarded in the medical field.

I find that Dr. Cohan's opinion was not contradictory to that of Dr. Swank because Dr. Cohan never disagreed with Dr. Swank's disability opinion, only the proposed method of treatment. There was no conflict for the ALJ to resolve as to the issue of whether plaintiff suffers from MS.

While the ALJ is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, he cannot reject them without presenting clear and convincing reasons for doing so. Reddick, 157 F.3d at 725. The ALJ did not articulate clear and convincing reasons. He simply stated that Dr. Swank's disability opinion was undercut by the low opinion others in the medical field hold of his treatment methods. Dr. Swank's preferred treatment regimen has nothing to do with his disability opinion. Furthermore, there appears to be dispute in the medical field as to whether drug therapy is also "of value." For example, Louis Peng, M.D., plaintiff's primary care physician, reported, "Copaxone and interferon and prednisone do

not cure MS either" and he was willing to support plaintiff's decision to use Dr. Swank's treatment method. Tr. 176.

As for the lack of objective findings, the ALJ pointed out that Dr. Swank's specific recommended limitations were not supported by any objective findings. I glean from this statement that the ALJ was concerned Dr. Swank's opinion was not supported by explanation or treatment records. However, "[m]erely to state that a medical opinion is not supported by enough objective findings does not achieve the level of specificity our prior cases have required[.]" Rodriguez v. Bowen, 876 F.2d 759, 762 (9th Cir. 1989) (citation omitted). In addition, the ALJ "must give sufficient weight to the subjective aspects of a doctor's opinion. This is especially true when the opinion is that of the treating physician." Id. (citation omitted). Substantial evidence in the record supports Dr. Swank's opinion that plaintiff suffers from MS, which is characterized by fatigue and muscle spasms, symptoms of which plaintiff complains. Accordingly, the ALJ erred when he failed to provide clear and convincing reasons for disregarding Dr. Swank's opinion.

B. Wagar and Kirnak

Jocelyn Kirnak, D.C. is a chiropractor, who found plaintiff suffered from extreme fatigue and an inability to sit or stand for prolonged periods over one to two hours. Similarly, Shelly Wagar, LMT, who is a Shiatsu (Japanese Bodywork) Therapist, opined that plaintiff should not sit or stand over 20 minutes and requires frequent breaks. The ALJ declined to give either opinion much weight since neither Ms. Kirnak nor Ms. Wagar are medical doctors, and because Ms. Wagar's opinion was unsupported by objective findings.

Plaintiff asserts that the ALJ improperly rejected this evidence. Evidence from a chiropractor and massage therapist, while not from acceptable medical sources, is "evidence from other sources" that may be used to show the severity of an impairment. 404 CFR § 1513(d). Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. While medical diagnoses are beyond the competence of lay witnesses, they may testify as to a claimant's symptoms or how an impairment affects her ability to work. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).[1]

The ALJ gave no reason for determining that Ms. Kirnak's opinion was not entitled to "much weight" other than that as a chiropractor, she is not an acceptable medical source. The ALJ needed to move to the next step and provide a reason for rejecting, as lay testimony, Ms. Kirnak's opinions about plaintiff's symptoms and how MS affects plaintiff's ability to work. He neglected to do so.

In contrast, with respect to Ms. Wagar, the ALJ found that in addition to not being an acceptable medical source, her opinions were not supported by objective findings. Accordingly, the ALJ gave a sufficient reason for rejecting the lay testimony of Ms. Wagar.

---

[1]It is troubling that the Commissioner relies on Bunnell v. Sullivan, 912 F.2d 1149, 1152 (9th Cir. 1990), rev'd on other grounds, 947 F.2d 341 (9th Cir. 1991), in which the court stated that "there is no requirement that the [ALJ] accept or specifically refute . . . evidence" from a chiropractor. Why should the ALJ be required to give specific reasons for rejecting lay witnesses, like spouses, parents, and friends, and not also chiropractors, who are specifically listed as "other sources" in the regulations along with spouses, parents, and friends? See 20 CFR § 404.1513(d). The Commissioner appears to recognize this inconsistency because she argues that evidence from a chiropractor may "at best" be considered lay witness evidence.

C. Plaintiff's Father

Finally, plaintiff complains that the ALJ improperly rejected the lay testimony of plaintiff's father. The Commissioner does not respond to this argument. Plaintiff's father wrote that plaintiff has short-term memory loss when she is fatigued, that she has blurred vision in her left eye, has balance problems, needs scheduled rest periods, and has trouble sitting due to numbness in her leg. The ALJ erred in failing to discuss this evidence and give reasons for his rejection of it.

II. Credibility Determination

Plaintiff contends that the ALJ improperly rejected her testimony. The Commissioner argues that the ALJ's credibility assessment is supported by substantial evidence, noting the medical evidence tending to discredit the severity of plaintiff's complaints, and plaintiff's daily activities.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen, 80 F.3d at 1281-82. The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282.

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284. Clear and convincing reasons for discrediting a claimant's testimony include consideration of inconsistencies between testimony and conduct, daily activities, type and dosage of medication, failure to seek treatment or to follow prescribed treatment, and reports to physicians. 20 C.F.R. 404.1529; see also, Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).

The Commissioner agrees that plaintiff produced medical evidence of underlying impairments consistent with her MS and there is no evidence that she is malingering. Therefore, the ALJ must provide clear and convincing reasons for discrediting plaintiff's testimony.

The ALJ found unconvincing plaintiff's testimony about her fatigue and nausea in extreme heat, spasms in her left shoulder and neck and numbness in her right and left arms. Relying on the evaluations of Drs. Spray and Eden, the ALJ found that no medical evidence supported plaintiff's complaints. In addition, the ALJ reasoned that plaintiff's work as a writer, and her public speaking on genealogy, was inconsistent with her complaints, as well as her work to start a non-profit organization, her reading and her therapy.

The ALJ discredited plaintiff's testimony by asserting that her symptoms of numbness and spasms in her upper extremities were unsupported by objective medical findings. The ALJ "may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence." Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001).

The ALJ was unable to point to any other evidence in the record discounting plaintiff's complaints about the spasms in her left shoulder and neck and numbness in her right and left arms. Indeed, nothing in plaintiff's daily activities would support the ALJ's conclusions that plaintiff had full use of her upper body, and the ALJ points to no other evidence in the record to buttress his conclusion.

With respect to plaintiff's daily activities, the ALJ stated that plaintiff remained active enough so as to raise questions in his mind about whether she had more stamina than she admitted. However, the fact that plaintiff reads, writes, attends therapy, even the fact that she hoped to start a non-profit, is not equal to the daily grind of working 8-hour days, five days a week. Furthermore, the fact that plaintiff used to speak publicly about genealogy is not inconsistent with her complaints of fatigue. As Dr. Swank explained, multiple sclerosis is a progressive disease.

Indeed, the activities that the ALJ pointed to are overshadowed by other evidence in the record that is consistent with plaintiff's complaints. For example, plaintiff lost a teaching opportunity due to her need to work less than twelve hours a week. She was also terminated as marketing director due to her fatigue, muscle spasms, headaches and memory loss. Finally, the ALJ neglected to evaluate plaintiff's testimony using other factors under 20 CFR § 404.1529, such as the fact that she sought treatment for her MS, and that she consistently reported her symptoms to her doctors on numerous occasions.

After fully and fairly considering all the evidence regarding plaintiff's testimony, her medical records and her activities, I am compelled to determine that the ALJ's credibility findings and interpretation of the record were not supported by substantial evidence. Although I

recognize it is not mandatory for me to credit plaintiff's testimony as true, based on the reasons above, I credit her testimony as a matter of law. See Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003).

III. Residual Functional Capacity and Ability to Perform Other Work

Plaintiff argues that the ALJ erred in forming plaintiff's residual functional capacity ("RFC"). The Commissioner offers no argument in response. The ALJ found plaintiff capable of sedentary work, with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, able to sit and to stand or walk for 6 hours during an 8-hour work day, and had unlimited use of her upper and lower extremities.

However, as plaintiff points out, if the reports of Dr. Swank, Ms. Kirnak and plaintiff's father are accepted as true, plaintiff suffers from fatigue and needs regularly scheduled rest periods throughout the day. This evidence undermines an RFC calling for plaintiff to sit and to stand or walk for 6 hours during an 8-hour work day.

Plaintiff also argues that the ALJ improperly failed to consider plaintiff's depression. Plaintiff argues that because plaintiff was later diagnosed with major depression, her depression should have been considered severe by the ALJ, or at least considered among other symptoms in crafting the RFC. The ALJ relied on a November 2001 opinion of Dr. George Mecouch, and Psychiatric Review Technique forms completed by Dr. Dorothy Anderson and Dr. Bill Hennings in December 2001 and April 2002, in determining that plaintiff's depression was mild or non-existent, and would not prevent her from working. However, subsequent treatment reports, submitted to the Appeals Council, disclose that plaintiff was admitted to the hospital for

depression, and was discharged with a diagnoses of Major Depression and Mixed Personality Traits.

I need not consider whether the ALJ erred in failing to account for plaintiff's depression, however, because as a result of the ALJ's errors set forth above, plaintiff's residual functional capacity assessment was less restrictive than required by the opinion of Dr. Swank, as required by the observations of Ms. Kirnak and plaintiff's father, as well as plaintiff's reported symptoms.

The ALJ found that plaintiff could perform other work existing in significant numbers in the national economy. The Commissioner has the burden in step five, and can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). The assumptions in the hypothetical question must be supported by substantial evidence. Id. at 1101.

The opinion of the VE cannot be relied upon if the vocational hypothetical asked by the ALJ is not supported by the record. Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988). When the vocational hypothetical does not reflect all of the claimant's limitations, the "expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991) (citations omitted).

The limitation noted by Dr. Swank, Ms. Kirnak, and plaintiff's father is dispositive of the ALJ's findings at step five. The ALJ found that plaintiff is capable of making an adjustment to work other than her past relevant work. However, when the VE was asked to take into account plaintiff's limitation of fatigue, she opined that there were no work places in significant numbers where plaintiff could rest thirty minutes every two hours. Accordingly, the ALJ's finding that

plaintiff is capable of working as an information clerk/clerical receptionist, data entry, or an order clerk/clerical worker is not supported by substantial evidence.

V. Appropriate Remedy

The question remains whether the case should be remanded for further proceedings or should be remanded for the payment of benefits. The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The court should grant an immediate award of benefits when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. Id. The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. See id. at 1178 n.2.

Although the ALJ did not have an opportunity to consider the additional evidence of plaintiff's depression, which would normally result in a remand, I conclude that the ALJ's failure to ask the VE the correct question does not leave issues that must be resolved before a finding of disability can be made. When a VE has not had the opportunity to consider an accurate description of a claimant's limitations, the remedy is to remand for a determination of vocational ability based on a hypothetical that accurately reflects the claimant's residual functional capacity. See Andrews v. Shalala, 53 F.3d 1035, 1042 (9th Cir. 1995). In this case, the conclusion of the VE is in the record.

At the hearing, plaintiff's attorney asked the VE to consider whether there were any work places in significant numbers where plaintiff could rest for thirty minutes every two hours. She testified that there were not.

The record as a whole establishes that plaintiff has a residual functional capacity requiring her to rest frequently throughout the day. This is corroborated by the opinion of Dr. Swank, the testimony of Ms. Kirnak, and the testimony of plaintiff's father. It is also consistent with plaintiff's subjective symptom testimony. In this case, the record has been fully developed and further proceedings would serve no purpose but delay. Permitting the Commissioner a further opportunity to amend findings to comport with the denial of disability benefits is not in the interests of justice.

**CONCLUSION**

For the reasons set forth above, the decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

DATED this 30th day of September, 2005.

/s/ Garr M. King
GARR M. KING
United States District Court Judge